[File No. 6705.]

J. E. SANDLIE, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, and R. H. Walker, W. E. Berwan and P. B. Sullivan as Commissioners of Said North Dakota Workmen's Compensation Bureau, Appellants.

(295 N. W. 497.)

Opinion filed November 9, 1940. Rehearing denied January 14, 1941.

*Alvin C. Strutz,* Attorney General, and *Milton K. Higgins, A. M. Kuhfeld,* and *Lynn G. Grimson,* Assistant Attorneys General, for appellants.

*S. E. Paletz* and *J. K. Murray,* for respondent.

BURR, J. In January, 1937, the plaintiff was employed by the North Dakota Mill & Elevator Association as auditor and continued in that capacity until after his alleged injury was received. He filed his claim with the Workmen's Compensation Bureau, which claim was disallowed. Thereupon the plaintiff appealed to the district court, and in his petition alleged that while acting as such auditor, and in the course of his employment, he suffered a stroke of paralysis on January 22, 1938, which stroke permanently and totally disabled and incapacitated him; that such stroke was "the proximate result of said employment;" that his employment consisted in "auditing and checking inventories of flour and other Mill products and in order to accomplish this work it was necessary and plaintiff was required to do heavy lifting and moving about of said heavy sacks of flour . . . that said heavy lifting caused overexertion and produced a rupture of a blood vessel thereby resulting in a stroke of paralysis."

He alleges further that prior thereto and during the course of employment, he was required to drive in the winter time through snow-blocked roads; this required him to leave his car and shovel snow in extreme cold weather, causing overexertion; and "that the nature of the work required by (of) the plaintiff was very severe and damaging to his general health."

The answer admits the plaintiff was in the employ of the North

Dakota Mill & Elevator Association during the time alleged; that he suffered a stroke of paralysis; and that the bureau had disallowed the claim; but alleges that the disability "was not due to injuries arising in the course of his employment nor to a disease proximately caused thereby, nor to an occupational disease, but alleges that his alleged disability was due to a disease not proximately caused by his said employment."

The case was tried to the court without a jury, and findings of fact and conclusions of law favorable to the plaintiff were made to the effect that the defendant should pay to the plaintiff the sum of $15 per week from the date he sustained his injury and "for the balance of his life, provided the plaintiff remain totally disabled;" that the defendant should pay to the plaintiff for doctors and similar fees $192.65; and allowed the plaintiff an attorney's fee of $250. Judgment was entered in accordance therewith and defendant appeals, demanding a trial de novo.

The specifications of error deal largely with two propositions—that the evidence is insufficient to sustain the judgment for the plaintiff, and that the district court, "in entering judgment for compensation on the basis of a 75 per cent aggravation of a pre-existing disease," erred in that there is no basis for such allocation.

In January, 1938, the plaintiff, while in the office of the manager of the Mill, suffered what is commonly known as a "stroke." He was immediately taken to the hospital. A large number of physicians were called as witnesses and a great deal of expert testimony was given. The plaintiff, at the time he received the "stroke," was suffering from what is commonly known as high blood pressure. This was his condition when he was employed as auditor; and it is the contention of the plaintiff that the work in which he was engaged aggravated this condition so as to produce the stroke of paralysis. In support of this contention, he presents testimony tending to show that during the course of his employment, he was required to lift sacks of flour of various weights from twenty-four pounds to ninety-eight pounds; and in many cases, he was required to raise these above his head in order to pile them. There is vigorous dispute as to this feature of his work, but there is testimony tending to show that at Dickinson in January, 1937, and in Grand Forks in January, 1938, and at other places, he did some such

work, and we will assume the accuracy of this testimony he presents. It is his further claim that while in the discharge of his duties and on the day that he received the stroke, he was engaged in a wordy altercation with one Anderson, who represented the Mill & Elevator in Duluth, Minnesota; that this altercation arose over the conduct of business; that the plaintiff, because of this altercation, became unduly excited emotionally, and within a short space of time suffered this stroke. The testimony of his witness, the manager of the Mill, is that it was from half an hour to an hour thereafter. There is testimony on the part of the plaintiff to the effect that his work in the office required him to climb stairs, and also, that in going from town to town during the winter time in discharge of his duties, he became snow-bound at times, and in shoveling out paths for his car, would overexert himself in the light of his condition.

The burden of proving that the injury suffered was received in the course of plaintiff's employment is upon him, and he must show this by the preponderance of the evidence. Dehn v. Kitchen, 54 N. D. 199, 209 N. W. 364.

The testimony produced by the plaintiff shows that as early as 1926 he was under the care of his physician and for what is commonly known as high blood pressure. The record shows that this pressure was technically stated as hypertension; the physician warned him against overexertion and informed him generally as to the serious state of his health. This physician testified at the trial that he examined the plaintiff immediately after the stroke, diagnosed his condition as caused by a cerebral hemorrhage, the result of this high blood pressure, testifying that overexertion, and emotional disturbance might so aggravate the condition as to cause this hemorrhage.

It is the claim of the defendant that the disability of the plaintiff was caused by this high blood pressure, which was not the result of his employment or of anything occurring in the course of his employment; that it was not an occupational disease; that the high blood pressure was the direct and proximate cause of the stroke; and therefore, any injury plaintiff suffered was not a compensable injury under the law governing the Workmen's Compensation Fund.

As the plaintiff states in his brief: "There is one question involved in this appeal. That question is a question of fact. It is this: Was

the stroke of paralysis, which the plaintiff suffered in January, 1938, proximately caused by his employment in the capacity of an auditor of the flour and feed agencies of the State Mill?"

We need not go into an extended discussion of the purpose of the Compensation Fund. It is sufficient to say it is established to afford sure and certain relief to an employee who suffers an injury arising in the course of his employment, the term "injury" including accident and "any disease proximately caused by the employment." Sections 396a1 and 396a2, Supp. It is not a health or life insurance fund, nor an accident insurance fund except to a limited degree. As said in Dehn v. Kitchen, 54 N. D. 199, 210, 209 N. W. 364, 368: "The fund administered by the compensation bureau is collected from employers of labor and is to be husbanded by it in the manner directed by the legislature for the benefit of workmen who receive injury in the course of their employment. It is not a general social insurance law justifying awards in cases of ordinary disease not arising in the course of the employment."

The "stroke" suffered was caused by the condition existing prior to plaintiff's employment. It was a disease not arising in the course of his employment. True, we held in Pace v. North Dakota Workmen's Comp. Bureau, 51 N. D. 815, 201 N. W. 348, and in Pfeiffer v. North Dakota Workmen's Comp. Bureau, 57 N. D. 326, 221 N. W. 894, that the acceleration of a pre-existing disease to a seriously increased degree, even to fatality, may under certain circumstances be an injury within the terms of the compensation law, if a causal connection is traced by competent evidence between the alleged accelerated condition and the original. Nevertheless, the applicant is not permitted to recover upon a purely speculative basis.

The prime cause of the "stroke" in the case at bar was the hypertensional condition. There is a mass of medical testimony which is not necessary to epitomize. It is sufficient to say that no other condition is shown except this condition; and the medical testimony shows that any exertion will have the effect of raising the blood pressure temporarily—both physical and emotional change—but where this change is transient, momentary, it is speculative to say that the temporary emotion or exertion was the proximate cause of the injury suffered some time afterwards; or that there was such aggravation as

justifies the conclusion that the aggravation and not the condition of high blood pressure was the proximate cause.

In the Dehn Case cited, we quote with approval from Carroll v. Industrial Commission, 69 Colo. 473, 195 P. 1097, 19 A.L.R. 107, where the court sustained a claim for compensation because the workman in that case, who was employed in an alfalfa meal mill, was found dead in the shed where he had been pitching hay; the court finding that the strenuous work in an inclosed building, combined with breathing dust laden air, brought on an attack of heart trouble which caused instant death; and, therefore, the condition of the air or the fact that it was dust laden was the proximate cause of the death. There is nothing in the case cited which indicates that the workman in that case had been suffering for years from heart trouble as in the case at bar. The strenuous labor brought on the heart trouble, and, combined with the breathing of the dust laden air, was the cause of the death.

"In the case at bar, any exertion shown, as at Dickinson, was long prior to the stroke; and even the alleged work at Grand Forks in the Mill was an appreciable time prior to the stroke. While it appears to be the generally accepted rule that the acceleration of a pre-existing condition may be considered in certain cases to be the proximate cause of the injury sustained, we cannot overlook the fact that every exertion has its effect upon the physical system; and if we carry the theory to extremes, then every movement in the course of employment would accelerate the natural condition of the physical body toward disease and decay and death. There must be more than this to justify a holding that the exertion or emotional disturbance was the proximate cause in this case."

We have examined the evidence carefully and have considered it in the light of the medical testimony. We are clear that the stroke was not the result of the employment, but rather of the condition which existed prior to the employment, and was not aggravated by the employment so as to cause additional injury.

For this reason it is not necessary to consider the second specification of error. The judgment is reversed and the action dismissed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.