William BENDER, Respondent,

v.

NORTH DAKOTA WORKMEN'S COMPEN-
SATION BUREAU, Appellant.

No. 8154.

Supreme Court of North Dakota.

Dec. 23, 1965.

Helgi Johanneson, Atty. Gen., and Milton E. Moskau, Asst. Atty. Gen., Bismarck, attorneys for appellant.

Kenneth M. Moran, Jamestown, attorney for respondent.

ERICKSTAD, Judge (on reassignment).

This litigation arises out of an injury sustained June 30, 1959, by William Bender, claimant and respondent, while employed by Midwest Motors of Jamestown. Midwest Motors was covered by the Workmen's Compensation Fund.

The injury occurred when Mr. Bender, in the course of his employment, was driving a pickup truck with trailer attached which was struck from behind by an automobile. From this accident he suffered a bruise which caused his lower back to become black and blue. He was examined by Dr. Clarence S. Martin of Kensal, who treated him but did not hospitalize him. Shortly thereafter he returned to work. On August 5, 1959, he wrenched his back while unloading truck hoists on his employer's premises. He returned to his job on August 7, 1959, putting in a full day's work, but he has not worked since that time. On August 18, 1959, he filed a claim with the North Dakota Workmen's Compensation Bureau, appellant herein. This claim was accepted and payments were made thereunder.

On June 8, 1962, the Bureau issued an order terminating further benefits as of May 25, 1961. On September 6, 1962, Mr. Bender petitioned the Bureau for a rehearing and requested that the Bureau compensate him for the period May 25, 1961, to May 22, 1962. The petition for rehearing was denied by the Bureau October 23, 1962, and Mr. Bender thereupon appealed to the Burleigh County District Court on November 19, 1962.

The district court found "that William Bender suffered a back injury, traumatic neurosis and an aggravation of a degenerative condition from said accident, and that he is entitled to compensation during the said period for which compensation is claimed." The court then ordered the case remanded to the Bureau for a rehearing to determine the percentage of aggravation and disability to the claimant from May 25, 1961, to May 22, 1962, as a result of his accident of June 30, 1959, and to award him compensation accordingly.

On October 3, 1963, a hearing was held in Jamestown, pursuant to the order of remand of the district court. In November, 1963, the Bureau issued an order reaffirming termination of further benefits. In its findings of fact, the Bureau stated that it found no additional facts upon which to change its order terminating further benefits dated June 8, 1962. The Bureau further found "the percentage of aggravation and disability to William Bender, from May 25, 1961, until May 22, 1962, as a result of his accident of June 30, 1959, to be zero."

On November 20, 1963, the district court issued its findings of fact, conclusions of law, and order for judgment. In its findings of fact, the court found "that the additional evidence as set forth in the transcript of testimony taken on October 3, 1963 establishes that during the period May 25, 1961 until May 22, 1962, Mr. Bender was suffering a one hundred percent dis-

ability as a result of his accident of June 30, 1959."

Judgment was entered accordingly on the same date. This appeal is taken by the Bureau from that judgment, and a trial de novo is demanded.

The Bureau alleges that the court erred as follows:

1. The District Court erred in directing the North Dakota Workmen's Compensation Bureau to make a 100% award to the claimant-appellee by its decision and judgment of November, 1963.

2. The District Court erred in making a decision without granting an opportunity to the parties to make an appearance and be heard.

3. The District Court erred in making a decision as to claim number 169449 upon evidence not pertaining thereto, and pertaining to an apparent disassociated claim and case.

4. The District Court erred in failing to affirm the North Dakota Workmen's Compensation Bureau's Order Terminating Further Benefits, which Order was issued by the Bureau on June 8, 1962.

Since the Bureau has placed special emphasis on contention No. 3, we shall consider this matter first.

The record certified to the district court by the Bureau contains the application, entitled "First Notice of Injury and Preliminary Application," which was submitted by the claimant and filed with the Bureau on August 18, 1959. At the top of this application the words "Bureau Claim No." appear in print, followed by a blank in which the number "169449" is written. A line is drawn across these numerals, making it appear as if the number were meant to be deleted. According to the information contained in this application, the accident which gave rise to the injury for which claim is made occurred August 5, 1959. No reference is made to an accident having occurred June 30, 1959.

The physician's report, prepared by Dr. Clarence S. Martin and filed with the Bureau August 18, 1959, states:

Helping unload hoist at body shop on 5 Aug. '59. Wrenched back in same general area as when hurt on 26 May '59. 2nd & 3rd intervertebral area on left.

In response to the question "Is present disability due entirely to this injury? * * If not, state contributing cause * * *," Dr. Martin inserted respectively "Yes" and "Plus aggravation of previous injury reported previously" in the blanks provided.

The employer's report, filed with the Bureau September 9, 1959, also referred to the accident as having occurred August 5, 1959.

The next item which forms a part of the certificate of record on appeal to the district court is a form letter from the Bureau to Dr. Martin, dated September 25, 1959, requesting additional information. This letter includes the following directive:

IN REPLY REFER TO CLAIM NO. 170,140
William Bender
Inj: 8/5/59

This is the first reference in the record to claim number 170,140.

On October 8, 1959, the Bureau received a report from Dr. Martin that Mr. Bender was undergoing studies at Trinity Hospital in Jamestown under Dr. Hogan, an orthopedist. This report refers to claim number 170,140 and gives the date of injury as August 5, 1959.

On January 23, 1960, Dr. C. W. Hogan, the orthopedic surgeon to whom Dr. Martin had referred Mr. Bender, filed a report with the Bureau. This report has "170140 or 169449" written across the top and designates the date of injury as June 30, 1959.

In the report Dr. Hogan described the injury and manner of infliction as follows:

Degeneration of L5 intervertebral disc sustained following accident when pickup truck he was driving was hit from behind by a car.

This is the first reference to the injury as having occurred June 30, 1959. All subsequent correspondence contained in the record refers to claim number 170,140. The date of injury, however, is variously referred to as June 30, August 5, or both.

We have already referred to the fact that Mr. Bender's preliminary application was assigned claim number 169,449 and that it appeared as if that number had been deleted. There is nothing on the face of the record which explains why his claim eventually came to bear claim number 170,140 or why there is a discrepancy in regard to the date of injury. In any event there has been an unaccountable commingling of claim numbers and dates. Since it is the Bureau which assigns claim numbers, we may presume that it is responsible for any error or confusion in this respect. It is interesting to note that the Bureau itself has, until this appeal, accepted the two claims as one. In its order terminating further benefits dated June 8, 1962, the Bureau declared:

That the above named individual filed a claim with the North Dakota Workmen's Compensation Bureau on the 18th day of August, 1959, for compensation and medical expenses arising from an accident occurring on the 30th day of June, 1959, while in the employ of Midwest Motors of Jamestown, North Dakota.

That the claimant's accident occurred when the pickup and trailer he was driving on Highway 281 was struck from behind by an automobile and as a result thereof the claimant sustained an injury to the L–5 intervertebral disc.

Subsequently the claimant again injured his back on the 5th day of August, 1959, when he was assisting in the unloading of truck hoists for the same employer.

Liability was accepted for these injuries and the medical and hospitalization costs were paid along with weekly compensation benefits.

On the 11th day of August, 1960, the North Dakota Workmen's Compensation Bureau received the reports of Dr. Marvin J. Geib, which indicated that the claimant has suffered a depressive neurosis as a result of his accident of June 30th, 1959. As a result of this report the Bureau accepted liability and the claimant continued in his status of being temporarily and totally disabled and compensation benefits were paid through the 25th day of May, 1961.

On May 22, 1962, Dr. Marvin J. Geib reported to the Bureau that the claimant was suffering from a degenerative condition and any aggravation thereof would be immeasurable.

Therefore, IT IS HEREBY ORDERED that further participation in the North Datoka Workmen's Compensation Fund shall be and the same is hereby terminated as of the 25th day of May, 1961.

In its order denying petition for rehearing dated October 23, 1962, the Bureau again refers to the accident under which the claim was paid as having occurred June 30, 1959. No mention is made of the accident of August 5, 1959, in this order.

 Through the proceedings in district court the accident giving rise to the claim was unquestioningly treated as having occurred June 30, 1959, and claim number 170,140 was likewise accepted by the parties as the proper claim number. Under these circumstances we are not impressed by the Bureau's contention that because of the

commingling of claims the district court did not have competent evidence before it upon which to base its judgment. As far as we can discover from the record, this is the first time that the Bureau has complained of this matter. This being so, we feel that this objection comes too late and is not well taken. An issue which is neither raised nor considered in the trial court cannot be raised upon appeal. Adams v. Bartel, 129 N.W.2d 755 (N.D.1964); Bank of Killdeer v. Fettig, 129 N.W.2d 365 (N.D. 1964); Newcastle Drilling Co. v. Thorndal, 105 N.W.2d 332 (N.D.1960).

We next consider the Bureau's first specification of error, that the district court erred in directing the Bureau to make a one hundred per cent award to Mr. Bender. In so doing, we proceed upon the assumption that both injuries were combined under claim number 170,140.

An appeal from the Bureau to a district court is governed by the Administrative Agencies Practice Act, Chapter 28–32 of the North Dakota Century Code. Section 28–32–19 provides, in part:

> The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. * * * After such hearing, the court shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law * * * or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact. If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court. North Dakota Century Code.

It is the duty of the district court to determine whether the facts are suffi-

cient to sustain the findings of fact and conclusions of the Bureau. In doing so, the court is not bound by the findings of the Bureau. It shall affirm them only when such findings are supported by substantial evidence. Gullickson v. North Dakota Workmen's Compensation Bureau, 83 N.W. 2d 826 (N.D.1957). See also: Williams Electric Coop. v. Montana-Dakota Util. Co., 79 N.W.2d 508 (N.D.1956); Application of Ditsworth, 78 N.D. 3, 48 N.W.2d 22.

In its order reaffirming termination of further benefits issued in November 1963 the Bureau found the percentage of aggravation and disability to the claimant from May 25, 1961, until May 22, 1962, as a result of his accident of June 30, 1959, to be zero. The district court, however, found that the claimant suffered a one hundred per cent aggravation and disability during this same period of time. We must therefore examine the record in light of the applicable law.

Section 65–05–15, N.D.C.C., provides:

> In case of aggravation of an injury or disease existing prior to a compensable injury, compensation, medical, hospital or funeral expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior disease or injury as reasonably may be attributable to such compensable injury. But any compensation paid on the basis of aggravation shall not be less than ten dollars per week unless the actual wages of claimant shall be less than ten dollars, in which event the actual wages shall be paid in compensation. North Dakota Century Code.

In Booke v. Workmen's Compensation Bureau, 70 N.D. 714, 297 N.W. 779, 783, we observed:

> * * * and though the acceleration of a pre-existing disease by an accident occurring in the course of the employ-

ment may be compensable, it is the aggravation which is compensable, not the pre-existing disease. Pace v. North Dakota Workmen's Compensation Bureau, 51 N.D. 815, 201 N.W. 348.

■ The evidence clearly supports the conclusion that Mr. Bender was totally disabled for the period in issue. There is, however, a dearth of evidence covering the crucial question, which is: What amount of Mr. Bender's disability is traceable to the injuries that he suffered in the accident of June 30, 1959, and the subsequent wrenching of his back August 5, 1959?

■ The fact that Mr. Bender may be 100 per cent disabled does not of itself warrant an award under our workmen's compensation statute. The disability, to be compensable, must be traceable to an injury suffered in the course of his employment. See § 65–05–15, N.D.C.C., previously cited, and § 65–05–05, N.D.C.C., which reads:

65–05–05. Payments made to insured employees injured in course of employment and to their dependents.— The bureau shall disburse the fund for the payment of compensation and other benefits as provided in this chapter to employees, or to their dependents in case death has ensued, who: * * *

3. Have been injured in the course of their employment. * * * North Dakota Century Code.

As we view the evidence, it appears that Mr. Bender had a very serious disability prior to the occurrence of the incidents upon which the claims are based.

Shortly after the August 5 incident Dr. Martin referred Mr. Bender to Dr. C. W. Hogan, an orthopedist. Dr. Hogan suggested to the Bureau that Mr. Bender be examined by Dr. Marvin J. Geib, a psychiatrist, to determine whether Mr. Bender suffered from traumatic neurosis resulting from the incident complained of. Dr. Geib, after having Mr. Bender examined by a psychologist, Dr. Eric Noble, made this report to the Bureau:

The following Psychological tests were administered by Dr. Noble on 5/31/60:

Doppelt Short Form of The WAIS
Rorschach
House-Tree-Person

The test revealed this person to [be] grossly impoverished in the intellectual sphere. Work knowledge is sharply curtailed, and his reading ability is at the grade school level. His concepts are primitive, and his ability to plan ahead is poorly developed. This is especially evident when he has to perceive and organize things in a sequential manner. His pro-rated IQ of 65 places him in the mental defective range.

(Letter of Dr. Marvin J. Geib, Director, Fargo-Moorhead Psychiatric Clinic, Aug. 8, 1960.)

Later, after a subsequent examination, Dr. Noble, who is associated with Dr. Geib, sent the Bureau a report containing these statements:

*This person is still functioning as a defective individual, his full IQ is 62.* The impression gleaned from the testing at this point gives the impression of a general deterioration in his ability to explain himself, and he also shows a marked difficulty with tasks which involve visual-motor coordination and immediate memory. There also seems to be a perceptual difficulty which is considered to be of a cortical nature. It is difficult to assess at this time whether or not this has any great significance because the individual is defective. If he had been functioning at a much higher level of functioning, the results of the tests at the present time would be significant in terms of over-all cortical changes. *However, because of the fact that this patient was most likely functioning at this level for*

*most of his life, it is difficult to assess the amount of deterioration. It is felt, however, that this man does show some generalized signs of deterioration which could be attributed very easily to something of a generalized cortical nature. This would be more in keeping with senile brain disease or a generalized atrophy rather than something which is of an acute nature.* [Emphasis supplied.]

(Psychological Evaluation by Dr. Eric Noble, Clinical Psychologist, Fargo-Moorhead Psychiatric Clinic, Oct. 9, 1961.)

Dr. M. B. Gustafson, a neurologist, in his report to the Bureau of October 9, 1961, found no neurological explanation for Mr. Bender's disabilities but said that he remained "completely and totally disabled because of the psychiatric disturbances."

Dr. Gustafson did not try to ascertain the cause or source of Mr. Bender's psychiatric disturbances, and, although Dr. Geib said in his report of August 8, 1960, "the possibility exists that the accident he had was sufficient to trigger off his present psychological dependency, and debilitate him," both Dr. Geib, the psychiatrist, and Dr. Noble, the clinical psychologist, were of the opinion that for the period now in issue, the aggravation of the previous existing degenerative condition from the injuries of June 30 and August 5, 1959, was so minimal as to be immeasurable.

I find it very difficult to determine the percent of aggravated injury to Mr. Bender as he has always been a mentally defective individual who already had been functioning below what would be considered normal. If we use mental deficiency as a guide, he would fall in the lower two percent of the population in terms of ability. Thus any further aggravation to an already limited condition would be immeasurable. (Letter of Dr. Marvin J. Geib, May 22, 1962.)

■ In other words, the specialists who were in the field of psychiatry, to whom Mr. Bender was referred by Dr. Hogan, and to whom the Bureau assigned the responsibility of determining aggravation of disability arising from the incidents, found no traumatic neurosis, thus found no disability due to the injuries complained of for the period of time now in issue.

Although Dr. Hogan, the orthopedist, reported to the Bureau that Mr. Bender's "marked apprehension and nervousness suggest a traumatic neurosis," he was careful at the hearing of October 3, 1963, to explain that " 'suggests' is quite different from a definite statement." It was also at this hearing that he testified that Mr. Bender had a 10 per cent orthopedic disability and that the rest (or 90 per cent) of his disability was due to "neuro-psychiatric" causes. When asked whether he thought Mr. Bender suffered from traumatic neurosis, Dr. Hogan said, "Up to my ability to ascertain that, I would say yes." Just previously he had been careful to point out that it was because his findings concerning Mr. Bender suggested neurosis that he had recommended consultation with a psychiatrist, Dr. Geib.

Under these circumstances we cannot ignore the opinions of the psychologist and psychiatrist who were recommended by Dr. Hogan and requested by the Bureau to ascertain the extent of Mr. Bender's neurosis resulting from the injuries complained of.

■ The remaining specification of error charges that the district court erred in making a decision without granting an opportunity to the parties to make an appearance and be heard.

The district court's findings of fact, conclusions of law, and order for judgment, dated November 20, 1963, which found Mr. Bender entitled to be compensated for 100 per cent disability, indicates that the Bureau appeared through its attorney, Milton Moskau. As for the hearing prior to the remand, the record contains a brief filed on behalf of the Bureau by its attorney, Myron

Bothun, and the fact that Mr. Bothun appeared before the district court prior to the order of remand is shown in the order entitled "Findings of Fact, Conclusions of Law, and Order of Remand," dated August 7, 1963. Therefore, we find nothing in the record before us supporting this contention.

■ However, we conclude that the court erred in finding an aggravation and compensable disability of 100 per cent for the period from May 25, 1961, to May 22, 1962. Accordingly, the trial court's judgment is modified, and the case is remanded with instruction to the trial court to enter a new order for judgment providing for an award of 10 per cent disability or the minimum award for aggravation, whichever is greater, for the period.

STRUTZ and TEIGEN, JJ., concur.

BURKE, C. J., did not participate.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.