Alice G. STOUT, Claimant and Appellee,

v.

**NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU,**
**Respondent and Appellant.**

Civ. No. 9143.

Supreme Court of North Dakota.

Dec. 17, 1975.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for claimant and appellee; argued by Thomas L. Zimney.

David L. Evans and Leonell W. Fraase, Sp. Asst. Attys. Gen., Bismarck, for respondent and appellant; argued by Leonell W. Fraase.

VOGEL, Judge.

Alice G. Stout applied for workmen's compensation death benefits for the death of her husband, Archie A. Stout, who died on November 26, 1973. The Workmen's Compensation Bureau denied the claim, she appealed, and the district court reversed the Bureau and entered judgment for her. The Bureau appeals. We affirm.

Stout was a truck driver. On the date of his death he delivered freight to a grain elevator at Thompson, North Dakota. The freight consisted of an anhydrous ammonia stand which carried two immovable metal reels intended to hold hoses. Stout and the manager of the elevator slid or skidded the machine off the truck onto a pickup truck. The machine weighed about 150 pounds and the effort involved was not strenuous. Almost immediately, Stout complained of not feeling well and of pain in his arm and chest. He went to the office and sat down. He called his employer in Grand Forks and asked to be picked up and returned home since he was unable to drive the truck. A few minutes later, he was dead. The cause of death was myocardial arrest.

There was no inkling of heart disease in Stout's prior medical history. In February of 1973, an electrocardiogram was taken and it was normal. In October of 1973, prior to a prostate operation, he had a physical examination and the report shows that his heart tones were regular and of good quality and there was no enlargement or

heart murmur. He returned to work on November 12, and his work was uneventful until the day of his death.

An autopsy was performed. It showed atherosclerotic occlusion of the proximal portion of the right coronary artery and severe pulmonary edema.

Mr. Stout's physician, who had examined him twice previous to the date of his death, testified that it was his opinion " . . . that Mr. Stout's exertion did precipitate the coronary insufficiency that resulted in acute cardiac failure and pulmonary edema and subsequent death." He was asked, "And is it your opinion that the exertion, moving this object, although it may not have been any great exertion, could precipitate the coronary insufficiency?" and he replied, "It is indeed." As to causation, he said that the facts speak for themselves: " . . . he was at work, he did exert within a period of a minute or two and he developed a severe illness and died shortly thereafter." He said that the pulmonary edema could occur within a very short time, and there was no evidence of any prior heart attack.

The Bureau offered no evidence to contradict that of the plaintiff's physician.

The Bureau, however, apparently relied on further testimony of the doctor that Stout had preexisting "bad coronary disease" and that "He was, you might say, walking a thin line every day maybe for years." The Bureau apparently concluded that the death was caused by the preexisting heart condition, and not by the exertion, although the Bureau concedes that the evidence shows that the exertion of moving the anhydrous ammonia stand precipitated the death.

The Bureau's findings include statements that " . . . the task was easy and that it required no particular amount of exertion . . . "; that the decedent had been performing the same type of work for years;

that he suffered from marked coronary atherosclerosis; and that "medical evidence indicates that individuals who suffer from the type of heart disease which caused the claimant's [sic] heart attack and death often die suddenly with very little exertion due to the nature of the disease." The Bureau's final three findings of fact are as follows:

"XII.

"That although medical evidence indicates that the deceased's heart attack on November 26, 1973, was precipitated by the exertion in the course of his employment on that date, this same medical evidence also indicates that due to the nature of the deceased's heart disease a heart attack could have resulted from any type of activity whether at home or on the job.

"XIII.

"That the fact that the deceased's heart attack did occur after unloading freight, which required no particular amount of exertion, the evidence does not substantiate the claimant's allegation that said heart attack was actually the result of the deceased's occupation rather than an unfortunate coincidence resulting from any type of exertion and due to an underlying heart condition.

"XIV.

"That the underlying coronary atherosclerosis is not an industrial disease."

The district court viewed the matter differently. Its findings point out that "some exertion" was required of Stout in order to move the stand, that he complained of pains in his chest and in his right arm immediately thereafter, and died soon afterward, and the Bureau's findings conceded that there was a causal connection between the death and the employment.

The trial court, as its conclusions of law, stated that the claimant had proved that the unloading of the stand was causally connected to the death, that she had proved

that the exertion of moving the stand precipitated the death, and that she had proved that she was entitled to death benefits. It reversed the decision of the Bureau.

## I

■ We affirm the district court. We do so, first of all, on the very simple basis that the evidence is undisputed that a work-connected exertion precipitated the heart attack which caused the death almost immediately. If the Bureau has any testimony or opinions to the contrary available to it, they are not part of the record and cannot be considered.

In *Foss v. North Dakota Workmen's Compensation Bureau,* 214 N.W.2d 519, 523 (N.D.1974), we said:

"While a myocardial arrest (also known as a myocardial infarction) may occur after exercise in some individuals, it often occurs unassociated with physical activity. . . . It is therefore difficult to establish the precipitating cause of such an affliction and the testimony of a medical expert is always desirable and in most cases indispensable to prove this issue." [Citations omitted.]

In *Foss,* the claimant lost because she had no medical proof of causation. Here, the claimant provided the only medical proof of causation.

## II

■ We affirm, secondly, on the basis that the Bureau's distinction between "unusual exertion" and "usual exertion," under which it makes awards in cases such as this where the exertion is "unusual" but not where it is "usual," is an arbitrary distinction which we decline to follow. In *Suedel v. North Dakota Workmen's Compensation Bureau,* 218 N.W.2d 164, 175 (N.D.1974), the

majority of this court said "we leave for another day" the question of the survival of the unusual-exertion rule in this State, while the minority was of the opinion that the rule had not previously existed in this State. Be that as it may, we now state the rule to be that no such distinction is to be observed in this State. In so ruling, we join the majority of jurisdictions and become a part of the trend toward the so-called usual-exertion rule.

By adopting this rule, we do not reverse such cases as *Sandlie v. North Dakota Workmen's Compensation Bureau,* 70 N.D. 449, 295 N.W. 497 (1941), which was decided primarily on the view that the evidence was insufficient to sustain the award,[1] nor do we let down the bars so that any death on the job becomes compensable. We hold that where, as here, the preponderance of the evidence sustains a holding that work-connected "usual" exertion precipitates injury or death, there may be recovery even though the injury or death was contributed to by a preexisting defect or disability. If the work-related exertion did not precipitate the injury, of course the recovery would be denied, as it was in *Sandlie.*

As we said in *Kuntz v. North Dakota Workmen's Compensation Bureau,* 139 N.W.2d 525, 527 (N.D.1966),

"Therefore, the fact that even though a pre-existing disease or weakness, such as an aneurism, may have predisposed an employee to an early death, the claimant may be entitled to compensation if the bursting of the aneurism took place earlier because of an injury suffered by the employee. *Pace v. North Dakota Workmen's Compensation Bureau,* 51 N.D. 815, 201 N.W. 348."

In *Suedel, supra,* as the majority opinion pointed out, the Workmen's Compensation Bureau found "that neither the rupture nor

---

1. We said (295 N.W. 497, at 499–500): "We are clear that the stroke was not the result of the employment, but rather of the condition which existed prior to the employment, and was not aggravated by the employment so as to cause additional injury."

the aneurysm was incident to or had its inception with [the decedent's] employment." 218 N.W.2d 164, at 172. In the case before us, the Bureau, with commendable candor, concedes that the heart attack was precipitated by the employment, but claims that the preexisting condition was not connected with the employment. We hold that it is not necessary that the preexisting condition be connected with the employment. We have so held in the past. *Kuntz v. North Dakota Workmen's Compensation Bureau, supra; Booke v. North Dakota Workmen's Compensation Bureau,* 70 N.D. 714, 297 N.W. 779 (1941); *Tweten v. North Dakota Workmen's Compensation Bureau,* 69 N.D. 369, 287 N.W. 304 (1939); *Pfeiffer v. North Dakota Workmen's Compensation Bureau,* 57 N.D. 326, 221 N.W. 894 (1928).

■ It is the general rule, to which we have adhered, that an employer takes the employee as he finds him. In *Pace v. North Dakota Workmen's Compensation Bureau,* 51 N.D. 815, 201 N.W. 348, 351 (1924), we said:

"It is quite immaterial that the decedent may have brought with him a disability."

### III

■ The Bureau further argues that the usual-exertion test cannot be applied in North Dakota because of statutory preclusion. It points to Section 65–01–02, subdivision 8, which defines "injury":

" 'Injury' shall mean only an injury arising in the course of employment including an injury caused by the willful act of a third person directed against an employee because of his employment, but such term shall not include an injury caused by the employee's willful intention to injure himself or to injure another, nor any injury received because of the use of narcotics or intoxicants while in the

course of the employment. Such term, *in addition to an injury by accident,* shall include:

"a. Any disease which can be fairly traceable to the employment. Compensation shall not be paid, however, for any condition which existed prior to the happening of a compensable injury nor for any disability chargeable to such condition. Ordinary diseases of life to which the general public outside of the employment is exposed shall not be compensable except where the disease follows as an incident to, and in its inception is caused by a hazard to which an employee is subjected to in the course of his employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. . . . It need not have been foreseen or expected, but after it is contracted, it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence; and

"b. An injury to artificial members; . . . ."

[Emphasis supplied.]

The Bureau argues that Stout died of a disease which could not be fairly traceable to his employment, and that the statute prohibits compensation for a condition which existed prior to the happening of the compensable injury. It further asserts that heart disease is an ordinary disease of life to which the general public is exposed and is not compensable unless it follows as an incident to a hazard of employment.

But this argument runs contrary to a long and growing line of cases holding that a heart attack caused by exertion is in itself an accident, not a disease,[2] and therefore it is immaterial that a preexisting disease con-

---

**2.** Our cases are in conflict as to whether the "accident" must be found in the cause, or in

the effect. In *Booke v. North Dakota Workmen's Compensation Bureau, supra,* we ap-

tributed to the death. In order to eliminate any confusion, we now state that we adhere to the majority rule, which is that a claim, if otherwise within the terms of the workmen's compensation Acts, is compensable even though the cause is routine and not accidental, if the result is not foreseen, intended, or anticipated. Subdivision 8 a of Section 65–01–02, N.D.C.C., relates only to disease, not accident. If the myocardial arrest is an accident—and we hold that it is—subdivision 8 a is not applicable.

In Larson, Workmen's Compensation Law, § 38.00, page 7–9, the case law in the United States is summarized:

> "The 'by accident' requirement is now deemed satisfied in most jurisdictions either if the cause was of an accidental character or if the effect was the unexpected result of the routine performance of the claimant's duties. Accordingly, if strain of claimant's usual exertions causes collapse from heart weakness, back weakness, hernia, and the like, the injury is held accidental. A very substantial minority of jurisdictions require a showing that the exertion was in some way unusual, or make other reservations, but this line of decision causes difficulty because of the constant necessity of drawing distinctions between usual and unusual strains."

In the specific category of "heart cases" including myocardial arrest, such as the one before us, three times as many jurisdictions now accept the usual-exertion rule as those not applying it. Larson, op.cit., § 38.30, p. 7–37.

For a convincing demonstration that the unusual-exertion test is historically incorrect, logically unsound, and impractical in operation, see Larson, op.cit., Sections 38.61,

page 7–98, 38.62, page 7–100, and 38.63, page 7–102.

We conclude that the Bureau's decision was not in accordance with the law, and that its findings of fact are not supported by the evidence. We therefore affirm the district court judgment reversing the order of the Bureau, and remand the case to the Bureau for disposition in accordance with this opinion. Sec. 28–32–19, N.D.C.C.

PEDERSON and PAULSON, JJ., concur.

SAND, Judge. (Concurring specially with modification.)

The proposed opinion properly concludes that the injury sustained by the employee is compensable under the North Dakota Workmen's Compensation Act. With this I agree. However, the opinion does not, but should, give recognition to § 65–05–15, N.D.C.C., which relates to the aggravation of an injury or a disease existing prior to a compensable injury and provides that the benefits be pro-rated on a proportional basis depending upon the extent of the aggravation which is determined from all the facts surrounding the incident. The workmen's compensation benefits would be proportionate to the disability arising from the aggravation of the prior disease or injury as may reasonably be attributable to the compensable injury.

Section 65–05–15 has been considered by the North Dakota Supreme Court in Bender v. North Dakota Workmen's Compensation Bureau, 139 N.W.2d 150 (1965), where it was recognized and applied, and in Tweten v. North Dakota Workmen's Compensation Bureau, 69 N.D. 369, 287 N.W. 304 (1939), where it was briefly discussed. In Tweten

proved a ruling by the Arizona Supreme Court that "accident" refers only to cause of injury, not injury itself. Pierce v. Phelps Dodge Corp., 42 Ariz. 436, 26 P.2d 1017, 1020 (1933). But in Pace v. North Dakota Workmen's Compensation Bureau, supra,

we held that excessive heat was the proximate cause of the bursting of a blood vessel that resulted in death, which was an end "not foreseen, intended, or anticipated" and was an "injury." This seems to be an adoption of the general rule.

this Court stated: "The above quoted statutory provision applies only to the aggravation of an existing disease; it does not require or permit a structural weakness to be considered in the allowance of compensation."

The authors Larson and Schneider on Workmen's Compensation discuss generally aggravation provisions, but they are not very helpful because the footnotes as to the North Dakota provisions refer to either § 65–01–02(9)(d), which was enacted by Chapter 388 of the 1961 Session Laws, relating to presumptions of certain disease in case of a fireman, or to § 65–04–18 relating to subsequent injury fund. Unfortunately, neither of the authors discuss § 65–05–15, which is a pertinent provision of the North Dakota Act, even though it was not part of the original Act and did not come into being until 1931.

The extent of the aggravation is basically a medical fact question to be resolved by the agency under appropriate rules of law. Even though it may be difficult in some instances to determine with exact precision the extent of the aggravation and the resulting proportionate benefits, nevertheless the statute contemplates that a reasonable effort be made.

This difficulty of apportioning the aggravation of an existing disease may have been recognized by the Bureau and may be the reason why Senate Bill 2125 was introduced in the Forty-fourth Legislative Assembly, which would have amended § 65–05–15 and would have provided that in all aggravation cases partial benefit awards would be on a fifty percent basis except where the claimant had no private medical or hospital insurance, in which instance the Bureau would pay the total amount of the medical expense. The Bill received a "do pass" by the committee, but on final passage was defeated by a vote of 23 ayes and 27 nays. The Senate Journal does not indicate or give any reason why the Bill was defeated.

Consequently, any explanation here would be speculation, which would have no greater value than to speculate what the result would have been if a Bill had been introduced providing for one hundred percent benefits.

The facts (particularly the autopsy report) in this case clearly show that Stout had a pre-existing disease, as such term is defined in § 65–01–02(8)(a), and as further defined in subsection (9)(a), (b), and (c).

Were it not for the provisions of § 65–05–15, I would agree that there would be no need for further comment, but until the Legislature modifies, amends, repeals, or supersedes it, this statutory provision must be recognized.

On this basis I would remand the claim to the Bureau for appropriate action pursuant to the provisions of § 65–05–15, N.D.C.C.

ERICKSTAD, C. J., concurs.