304 N.W.2d 412 (1981)
In the Matter of the Claim of Maynard L. BROMLEY for Compensation from the North Dakota Workmen's Compensation Fund.
Maynard L. BROMLEY, Appellant,
v.
NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.
Civ. No. 9878.
Supreme Court of North Dakota.
March 25, 1981.
*413 John J. Tebelius, Harvey, for appellant.
Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck, for appellee.
SAND, Justice.
This is an appeal by the claimant, Maynard L. Bromley [Bromley], from district court judgment affirming an order of the Workmen's Compensation Bureau [Bureau] dismissing Bromley's claim for disability and medical benefits resulting from injuries allegedly incurred in the course of Bromley's employment at the Pioneer Bar in Harvey, North Dakota.
*414 It is undisputed that Bromley was hospitalized from 22 Mar. 1978 through 7 April 1978 for treatment of thrombophlebitis in his left leg. But whether or not Bromley's injury arose out of and in the course of his employment is disputed.
Bromley's claim to the Bureau stated that the injury which caused the thrombophlebitis occurred on 22 Mar. 1978 when, during the course of restocking a cooler at the Pioneer Bar, one of the beverage cases he was carrying slipped and hit his left leg on the inner side of his thigh. The employer agreed with this statement. Bromley also asserts that when he was admitted to the hospital on 22 March 1978 he told his attending physician, Dr. Ching, about the accident.
The Bureau's decision relied upon Dr. Ching's initial history and physical [history] and part of the attending physician's report to the Bureau [report]. The history taken by Dr. Ching in part states that Bromley "had been in recently good health until one week prior to admission when he had the onset of left thigh pain." Furthermore, Dr. Ching's report to the Bureau states in pertinent part as follows:
"Are you satisfied there is no misrepresentation or malingering in this case? No.
. . . . .
"Re: Misrepresentation: The patient mentioned nothing about injuring himself at work until 4 days prior to discharge from the hospital."
However, we also note that the report to the Bureau contains the following pertinent question and response by Dr. Ching:
"Is present disability due to an occupational disease or injury?
"Yes."
The Bureau, after considering the claim and after examining all of the evidence, files, records, and correspondence relating to the claim, made its findings of fact and conclusions of law without a formal hearing and issued an order dismissing the claim on 13 June 1978. The claimant petitioned for a rehearing as provided for by law and as a result the bureau set the matter for a formal hearing.
After a formal hearing on 20 Nov. 1978, the Bureau again entered an order dismissing Bromley's claim because it found that his injury had not occurred in the course of his employment. Bromley appealed from that order to the district court. The district court affirmed the Bureau's order and judgment was entered. Bromley appealed to this Court.
Bromley asserts that the Bureau erred in finding that his injury did not occur in the course of his employment, and, therefore, erred in denying his claim for disability and medical benefits.
Pursuant to § 65-10-01, North Dakota Century Code, appeals from decisions of the Bureau may be taken to the district court in the manner provided in the Administrative Agencies Practice Act, Ch. 28-32, NDCC. The district court's judgment in such a case may be appealed to this Court pursuant to § 28-32-21, NDCC, which provides that this Court is to review an agency's decision as provided by § 28-32-19, NDCC. Accordingly, we review the findings of fact, conclusions of law, and order made by the Bureau rather than the findings by the district court. Steele v. North Dakota Workmen's Compensation Bureau, 273 N.W.2d 692 (N.D.1978). On appeal of an administrative agency's decision the Civil Rules and Rule 52(a), NDRCivP, do not apply. Rule 81(b) NDRCivP. Reliance Ins. Co. v. Public Service Commission, 250 N.W.2d 918 (N.D.1977).
Pursuant to § 28-32-19, NDCC, this Court shall affirm the decision of the Bureau unless we find that:
"1. The decision or determination is not in accordance with the law.
"2. The decision is in violation of the constitutional rights of the appellant.
"3. Provisions of this chapter have not been complied with in the proceedings before the agency.
"4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

*415 "5. The findings of fact made by the agency are not supported by the preponderance of the evidence.
"6. The conclusions and decision of the agency are not supported by its findings of fact."
We have said that our review of an administrative agency decision is three-fold:
(1) Are the findings of fact supported by a preponderance of the evidence?
(2) Are the conclusions of law sustained by the findings of fact?
(3) Is the agency decision supported by the conclusions of law?
Asbridge v. North Dakota Highway Commissioner, 291 N.W.2d 739, 743 (N.D.1980).
Furthermore, in Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 220 (N.D.1979), we said:
"In construing the `preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record."
In reviewing the entire record, we must keep in mind that a claimant seeking benefits from the Workmen's Compensation Fund has the burden of establishing his right to participate therein. Section 65-01-11, NDCC; Steele v. North Dakota Workmen's Compensation Bureau, supra. Additionally, there must be positive evidence showing that the disability was fairly traceable to the injury suffered by the employee and that the injury actually had to be in the course of employment. Kuntz v. North Dakota Workmen's Compensation Bureau, 139 N.W.2d 525 (N.D.1966).
We must also remember that the Workmen's Compensation Act is to be construed liberally with the view of extending its benefit provisions to all who can fairly be brought within them. Morel v. Thompson, 225 N.W.2d 584 (N.D.1975); Boettner v. Twin City Construction Co., 214 N.W.2d 635 (N.D.1974); Brown v. North Dakota Workmen's Compensation Bureau, 152 N.W.2d 799 (N.D.1967).
In this instance there is a conflict between some of the information contained in Dr. Ching's history and the testimony given at the formal hearing by Bromley and Dr. Marvin J. Towarnicky [Towarnicky]. Additionally, there are internal discrepancies in the attending physician's report submitted to the Bureau by Dr. Ching. The resolution of these conflicts and discrepancies is the critical issue in this case.
Bromley asserts that these conflicts and discrepancies should have been resolved in his favor because Dr. Ching's history is "confused, deficient, and incomplete." At the formal hearing Bromley relied heavily on testimony by Towarnicky to explain the "confusion" created by Dr. Ching's history.[1]
Towarnicky testified that thrombophlebitis is a condition in which blood clots form inside a vein. Towarnicky further testified that thrombophlebitis can be caused by varicose veins due to incompetent valves within the vein; cancer; dehydration; complications with delivery; pelvic surgery; and injury or trauma to the vein. Based on Towarnicky's testimony, it is apparent that a person with varicose veins, such as Bromley, could develop thrombophlebitis as a result of being hit with an object. However, Towarnicky also testified that he treated Bromley two months after Dr. Ching, and that at that time he could not tell the cause of Bromley's thrombophlebitis.
Towarnicky then testified that Dr. Ching's initial history was deficient because it did not contain notations relating to *416 "negative" findings concerning causes for thrombophlebitis. Towarnicky testified that a "negative" finding referred to possible causes of thrombophlebitis which were not present with a particular patient.
Because Dr. Ching's report does not contain "negative" findings as to whether or not Bromley's thrombophlebitis resulted from being hit with an object, it leaves uncertainties and suggests that Dr. Ching either failed to inquire in detail concerning this possible cause of Bromley's injury, or to insert the information in his history.
Bromley asserts that the reference in Dr. Ching's history to Bromley's "good health until one week prior to admission" is confusing and incomplete because it is inconsistent with Bromley's testimony that he told Dr. Ching about the accident on 22 Mar. 1978. Bromley asserts that there is further "confusion" in Dr. Ching's initial history physical because the addendum to the history states in part as follows:
 ?[2]
 /
 March
"The patient related to me on April 3, 1978 that prior to his admission he had an accident two or three days ago at which some beer cases fell on his left leg. After the injury, the left thigh became erythematous and tender. It continued to worsen until he sought my care on March 22, 1978."
Although each party has offered their explanation of this entry, neither side has satisfactorily explained the entry.
We have also noted earlier herein the reference in Dr. Ching's attending physician's report to the Bureau on the question whether or not Bromley's disability was due to an occupational disease or injury and his response, which is inconsistent with other parts of the same report.
Because of the discrepancies in the same report by Dr. Ching, and lack of findings in Dr. Ching's history relating to "negative" findings,[3] we believe some comments on the Bureau's function in receiving and making initial determinations on a claim are appropriate.
In Steele v. North Dakota Workmen's Compensation Bureau, supra at 702, we stated:
"We believe the adversary concept employed in our judicial system has only limited application to claims for benefits. The Bureau in carrying out its statutory duties acts in a quasi-judicial capacity and should be primarily concerned with the proper, fair, and just determination of any claim submitted. In making this observation we are fully cognizant that the existing case law places the burden upon the claimant, but nevertheless the Bureau should not place itself in a true or fully adversary position to the claimant. In resolving an issue the Bureau should take the position of an administrative agency acting in a quasi-judicial capacity even though it also acts as an investigative body."
To this we add that, in situations in which a medical record relied upon by the Bureau contains noticeable discrepancies, the Bureau, as part of its preliminary investigative duty should refer the report back *417 to the "maker" to clarify the discrepancies and provide an accurate report. The Bureau is in the best position to clarify such discrepancies because the claimant invariably does not have an opportunity to examine the Bureau's record until a later date. In most instances this occurs after the Bureau has made its initial decision and issued its order of dismissal without a formal hearing. If a report contains information directly supporting both denying and granting the claim and is not clarified by the Bureau, the discrepancies become critical when, as in this instance, the "maker" of the inconsistent report is unavailable at the formal hearing to explain or clarify the discrepancies and the Bureau relies upon only one part of the report to deny the claim.[4] This is especially true where all other reports, including the Bureau's investigative report, either support or are reconcilable with the claimant's statement and the claimant's testimony at the formal hearing reflects a factual situation which, if true, would entitle him to benefits, and the claimant also presented medical testimony pointing out the deficiencies in the Bureau's medical records.
While the laws pertaining to disability benefits under the Federal Social Security Act are different than North Dakota workmen's compensation law, nevertheless case laws developed pertaining to comparable duties, responsibilities, and functions of the agency in receiving and making initial determinations on a claim are substantially similar. We are not aware of any compelling reason why those rules as developed by the court should not have application to similar duties, responsibilities, and functions of the North Dakota Workmen's Compensation Bureau in receiving and making initial determinations on a claim.
Normally, it is within the province of the administrative agency, not the courts, to weigh conflicting medical opinions and to resolve these conflicts. Hassler v. Weinberger, 502 F.2d 172 (7th Cir. 1974). However, in the instant case there is no dispute that Bromley suffers from thrombophlebitis. The differences that exist, if any, do not depend upon expert medical opinion for their resolution, but require a determination of when, how, and under what circumstances the injury was sustained. In this instance the Bureau based its decision upon the part of the report by Dr. Ching supporting its decision but discounted the part of the same report which was inconsistent with its decision without any attempt to obtain a clarification of the discrepancy. This report, as well as the other reports made by Dr. Ching, were received by the Bureau before it made its initial dismissal order. The Bureau could not help notice these discrepancies and should have made reasonable efforts to have them clarified.
An administrative agency may not select certain parts or rely only upon a part or segment of a report, but must take into consideration the entire medical report or reports, including the history. Hassler, supra.
In Hassler, the issue was whether or not the claimant's mental impairment was so severe as to make him disabled within the meaning of the Social Security Act. The Secretary found the impairment rating for his mental condition totaled 15%. The Seventh Circuit Court of Appeals reversed the Secretary's decision because the view that the claimant's mental impairments were only 15% disabling could not be reconciled with the doctor's final conclusion that the prognosis for return to significant gainful activity was considered nil, and the doctor's report, when read in its entirety, indicated the claimant was disabled.
Where prejudicial inconsistencies exist in the same medical report the agency has the initial responsibility to attempt to resolve the inconsistencies. Valentine v. Richardson, 324 F.Supp. 206 (D.N.M.1971), aff'd after remand, 468 F.2d 588 (10th Cir. 1972).
*418 In Valentine the issue was whether or not the Secretary's decision that the claimant was not entitled to disability benefits was supported by substantial evidence. The record reflected that information was furnished in response to an inquiry of the claimant's treating doctor's brother which stated that the treating doctor had not seen the claimant from 1961 through 1966. However, the treating doctor submitted a letter stating that he had been treating the claimant on the average of ten visits per year since 1961. The district court held that the Secretary's final decision was not supported by substantial evidence because no attempt was made to reconcile these inconsistencies.
These cases stand for the legal concept that if inconsistent parts of the same report are not clarified, then a final decision which is in accord with part of the report but not supported by another part of the report is not supported by substantial evidence. See also, Baker v. Richardson, 327 F.Supp. 349 (M.D.Fla.1971) [finding based upon psychiatric report which was in need of clarification was not supported by substantial evidence]; Staskel v. Gardner, 274 F.Supp. 861 (E.D.Pa.1967) [finding based upon inconsistent report of history of illness appearing in medical records not supported by substantial evidence].
Although these cases deal with whether or not there was substantial evidence to support the Secretary's decision, we believe these concepts are equally applicable to our review of the Bureau's decision to determine whether or not it is supported by a preponderance of the evidence because the substantial evidence standard is less demanding than the preponderance of evidence standard. Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003 (5th Cir. 1978); Miller v. Weinberger, 389 F.Supp. 762 (N.D. Tex.1975); see, Application of Bank of Rhame, 231 N.W.2d 801 (N.D.1975).
Because of the discrepancies in Dr. Ching's report to the Bureau which were not clarified, and the Bureau relying only upon the part of the report favorable to its decision and and rejecting or disregarding the part of the report and evidence unfavorable to its decision, we conclude that the Bureau's decision is not supported by a preponderance of the evidence.
Accordingly, we set aside the district court judgment and reverse the decision of the Bureau and remand this case to the Bureau for further proceedings to clarify the discrepancies in Dr. Ching's history and medical report to the Bureau with either direct testimony of Dr. Ching by deposition or by affidavit in response to questions submitted by both parties. Both parties should be permitted to formulate questions pertaining to the extent of Dr. Ching's interrogation of Bromley regarding the cause of his thrombophlebitis and any other pertinent questions which will tend to clarify or answer the basic question whether or not Bromley sustained an injury in course of employment. Under the present circumstances the cost to clear up the discrepancies is to be borne by the Bureau.
It is contemplated that all parties will fully cooperate to resolve the deficiencies or discrepancies, but because of the unusual circumstances in this case the Bureau has the laboring oar.
ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and PAULSON, JJ., concur.
NOTES
[1] Bromley, Towarnicky, and Leroy Bromley, Maynard's brother and employer, testified at the formal hearing. Dr. Ching apparently left the hospital sometime after treating Bromley and did not testify at the hearing. However, Dr. Ching's reports were part of the record before the Bureau.
[2] The question mark appears on the copy of the report filed with the record on appeal. Upon request, the Bureau provided the Court with its file copy which is a copy of the original. The Bureau's file copy contained the question mark in pencil. The original report presumably is at the hospital. This clearly suggests or establishes that this discrepancy was noted by the Bureau but apparently the Bureau decided not to do anything about it. We also note some items in the report to the Bureau were highlighted in green.
[3] The claimant's statement reportedly made toward the end of his hospitalization as to how he injured his left thigh, without further clarification, is not necessarily incompatible with the statement in the history and physical report. Here none was given nor does the report indicate that the claimant was asked if he injured his left thigh. This demonstrates the importance of "negative findings" as mentioned by Dr. Towarnicky.
[4] If we were to approve a method of permitting the Bureau to select only the part of a report favorable to its position and reject the part favorable to the claimants, then we would in effect endorse a concept which would encourage arbitrary and capricious decisions. This we cannot do.