Delores NELSON, Claimant and Appellee,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Respondent and Appellant.

Civ. No. 10079.

Supreme Court of North Dakota.

March 11, 1982.

Jack G. Marcil of Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for claimant and appellee.

Richard J. Gross, Sp. Asst. Atty. Gen., Bismarck, for respondent and appellant North Dakota Workmen's Compensation Bureau.

VANDE WALLE, Justice.

The North Dakota Workmen's Compensation Bureau (hereinafter "Bureau") appealed from a decision of the district court of Cass County ordering the Bureau to make an award to Delores Nelson, the wife of Aldean Nelson, deceased. We reverse the decision of the district court and remand with directions that a judgment be entered affirming the order of the Bureau denying the claim.

Aldean Nelson was employed by Burlington-Northern Transport Co. as a lead driver. In that position Nelson was responsible for directing the activities of his fellow employees as well as having driving duties. He prepared the paper work directing other employees as to the tasks they were to perform. After issuing these directions he engaged in the physical labor required of the other workers. On November 9, 1979, Nelson was hooking up the air hoses on his tractor-trailer, which he had just driven from Grandin, North Dakota, with a load of seed. The decedent intended to take a few minutes' break for a sandwich before returning to Grandin. At that time he dropped to the ground and died. Delores Nelson, Aldean's wife, filed a claim for death benefits with the Bureau, in which she stated the injury was "unusual stress caused heart attack and death." The Bureau denied the claim and Delores petitioned for a rehearing. The rehearing, apparently by agreement between counsel for the Bureau and counsel for Delores, included depositions of Delores, Kermit Engstrom, a friend and fellow worker of Aldean, and Dr. Kana, a physician who had treated Aldean in previous years and to whom Aldean went every two years for a physical examination required by Burlington-Northern Transport Co. In addition, medical records involving hospitalization of Aldean for repair of a wrist injury were submitted at the rehearing. Following the submission of the depositions and other evidence the Bureau issued an order affirming the dismissal of Delores's claim. The Bureau in its order found:

## "FINDINGS OF FACT

### I.

"That on the 23rd day of January, 1980, the claimant above named filed a claim with this Bureau for death benefits resulting from the death of Aldean C. Nelson on November 9, 1979.

### "II.

"That the decedent, on the 9th day of November, 1979, was an employee of B. N. Transport, Fargo, North Dakota, and the occupation of the decedent was dispatcher.

### "III.

"That the deceased died while hooking up air hoses on a trailer in the course of his employment on November 9, 1979.

### "IV.

"That the only substantiation as to a possible cause of death is found on. the death certificate which indicates 'apparent acute myocardial infarction.'

### "V.

"That where a claim for death benefits has been filed, a death certificate can only be considered as evidence of death and cannot be used to establish the cause of death.

### "VI.

"That the decedent's attending physician, Dr. Kana, is in family practice, did not examine the decedent after his death and, in fact, has not seen him since December of 1977.

### "VII.

"That the decedent had been hypertensive and on hypertensive medications and had a long-term prior history of heavy smoking.

### "VIII.

"That decedent's physician stated that he had no prior knowledge of any emotional stress on the decedent.

### "IX.

"That the decedent's treating physician indicated that it is not any less likely that he suffered from a ruptured aneurism than that he suffered from a heart attack.

### "X.

"That the decedent's treating physician indicated that 'if conditions were right, where the vessels were going to be closed off, certainly, you know, but stress might have tipped the balance' but that a history of smoking and hypertension alone could have caused a heart attack, if the decedent had a heart attack.

### "XI.

"That the deceased was performing the normal duties of his occupation at the time of the incident which caused his death.

### "XII.

"That all medical evidence, even as to the cause of death, is speculative and conjectural; and the Bureau may not accept claims based upon speculation, conjecture, or surmise."

On the basis of these findings the Bureau, in its order, made the following conclusions of law:

## "CONCLUSIONS OF LAW

### "I.

"That the claimant has failed to prove that the decedent suffered an injury by accident arising out of and in the course of his employment.

### "II.

"That the claimant has failed to prove that the heart attack, if it was a heart

attack, sustained by the decedent was precipitated by unusual stress in the course of his employment.

"III.

"That the claimant has failed to prove that the heart attack, if it was a heart attack, of the decedent was causally related to his employment with reasonable medical certainty.

"IV.

"That the claimant has failed to prove that she is entitled to any benefits under the North Dakota Workmen's Compensation Act in connection with the death of the decedent."

Delores appealed the order affirming the dismissal of her claim to district court.

The district court, apparently in reliance upon Dr. Kana's testimony, determined that Delores proved that Aldean's heart attack was precipitated by unusual stress in the course of his employment and that the heart attack was causally related to his employment with reasonable medical certainty. The district court ordered that the case be remanded to the Bureau for further proceedings and modification.[1]

 Appeals from Bureau decisions are governed by Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act. Sec. 65–10–01, N.D.C.C. Our review in these matters is limited and involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? Sec. 28–32–19, N.D.C.C.; *Asbridge v. North Dakota State Highway Comr.*, 291

N.W.2d 739 (N.D.1980). Upon reviewing the evidence, this court must look to the record compiled before the administrative agency rather than to the findings of the district court. *North Dakota Real Estate Commission v. Allen*, 271 N.W.2d 593 (N.D. 1978). We have also recognized that in reviewing the findings of an administrative agency we must exercise restraint and that under the "preponderance of the evidence" standard we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D. 1979). In reviewing the record we are also aware that the claimant seeking benefits from the Bureau has the burden of establishing his right to participate in the Workmen's Compensation Fund. Sec. 65–01–11, N.D.C.C.; *Claim of Bromley*, 304 N.W.2d 412 (N.D.1981).

Section 65–05–05, N.D.C.C., provides for the payment of compensation and other benefits to employees, or to their dependents in case death has ensued, who have "been injured in the course of their employment." The term "injury" as used in Section 65–05–05 is defined by Section 65–01–02(8), N.D.C.C. For the purposes of this case the portion of the definition which controls reads:

"If an injury is due to a heart attack or stroke, such heart attack or stroke must be causally related to the worker's employment, with reasonable medical certainty, and must have been precipitated by unusual stress."[2]

---

1. The order also stated: "IT IS THE FURTHER recommendation of the Court that unless and until affirmative evidence be presented to the Bureau either contradicting or confirming the opinions of Dr. Kana in the immediate future regarding the cause of death and its relationship to the stress of employment then it is ordered that the Bureau make an award to the claimant."

2. This provision, inserted by the 1977 Legislative Assembly, Chapter 579, Sec. 2, 1977 N.D. Sess.Laws, is one of the few definitions of injury in the Workmen's Compensation Act which is directed to a specific ailment. A reading of the legislative history of this amendment to Section 65–01–02 leaves no doubt that it was enacted as a result of this court's decision in *Stout v. N. D. Workmen's Compensation Bureau*, 236 N.W.2d 889 (N.D.1975), holding that the "usual exertion" rule in workmen's com-

The Bureau, on appeal from the order of the district court, contends that Aldean did not suffer a heart attack which was causally related to his employment with reasonable medical certainty and was precipitated by unusual stress. It is the Bureau's position that its decision is supported by a preponderance of evidence.

■ The Bureau initially argues that the evidence is not sufficient to indicate that Aldean died from a heart attack. This is the provision of the Bureau's findings which the district court found contrary to the evidence. In support of its position the Bureau notes that the only medical evidence introduced by Delores was the deposition of Dr. Kana, who had not seen nor examined Aldean for a two-year period preceding his death and that Dr. Kana, on examination, stated that Aldean's death could have been caused by a stroke or an aneurysm as well as a heart attack. The Bureau also points out that the death certificate indicates the cause of death as "apparent" acute myocardial infarction, and that the death certificate is not itself conclusive evidence of the cause of death. We do not find the Bureau's position convincing insofar as the cause of death is concerned. Section 65–01–11, N.D.C.C., does provide that in the event of a claim for death benefits the official death certificate may not be used to establish the cause of death but shall be considered only as evidence of death. It is also true that Dr. Kana did testify that death "could" have been caused by a stroke or an aneurysm as well as a heart attack. However, Dr. Kana also testified that he believed the cause of death was a heart attack because of the sudden-

ness of death after Aldean collapsed. Thus, while Dr. Kana testified that the cause of death "could" have been a stroke or an aneurysm rather than a heart attack, his opinion was that the cause of death was a heart attack. If our statute required absolute medical certainty as to the cause of death, the Bureau's position might be well taken. We do not so construe it. Reasonable medical certainty is sufficient to establish the cause of death, independent of the death certificate, and the testimony of Dr. Kana as well as the other evidence introduced by Delores causes us to conclude that she did establish, with reasonable medical certainty, that a heart attack caused Aldean's death. Furthermore, if the cause of death was a stroke rather than a heart attack, the difference would be immaterial for the purposes of the claim because the statute, Section 65–01–02(8), N.D.C.C., makes no distinction between a heart attack and a stroke.

The Bureau's next contention is that if the cause of death was a heart attack it was not causally related to Aldean's employment, with reasonable medical certainty, and that it was not precipitated by unusual stress. Both requirements are contained in Section 65–01–02(8), N.D.C.C., as a condition of an award for death benefits.

■ The Bureau argues that the evidence of Aldean's previous history of hypertension and his previous history of heavy smoking, both of which are leading causes of heart disease, indicates that the heart attack was not related to Aldean's employment with reasonable medical certainty. Delores points out that the evidence indicated Alde-

<hr>

pensation cases is the law of North Dakota. *Stout* involved a claim for death due to a heart attack and the Bureau had argued that it made awards for heart attacks only where there was evidence of "unusual exertion" but not where it was "usual." This court held that distinction arbitrary and refused to follow it. The distinction is now required by statute and we must apply it in this instance. See Justice Vogel's concurring opinion in *Stout v. N. D. Workmen's Comp. Bur.*, 253 N.W.2d 429 (N.D.1977), in which, after remand of the case in 236 N.W.2d 889, the Bureau awarded compensation on the basis of the aggravation statute, Section

65–05–15, N.D.C.C., and this court, on the second appeal, held it was not appropriate to arbitrarily select an apportionment figure of 50 percent in heart attack cases. Effective July 1, 1977, Section 65–05–15, N.D.C.C., was amended at the request of the Bureau [by the same bill which amended Section 65–01–02—see Chapter 579, Sec. 14, 1977 N.D.Sess.Laws], by adding the following provision: "If the degree of aggravation cannot be determined, the percentage award shall be fifty percent of total benefits recoverable if one hundred percent of the injury had been the result of employment."

an's hypertension was controlled and that he had given up smoking some time prior to his death. If the Bureau's position is that the heart attack must not only be causally related to employment but that the employment must be the sole and only cause of the heart attack, we do not agree. There is no doubt that under the statute there must be a causal connection between employment and the heart attack. That conclusion does not, however, indicate that any employee who has hypertension or other diseases or habits which contribute to heart disease is automatically excluded from benefits for heart attacks. In *Aker v. State Dept. of Natural Resources*, Minn., 282 N.W.2d 533 (1979), the Minnesota Supreme Court considered an appeal in which the issue was whether or not the employee's myocardial infarction arose out of and in the course of employment as required by the Minnesota statute (Sec. 176.011, subd. 16) for benefits to accrue to the claimant. The Minnesota court stated:

> "There is no requirement that work-related stress be the sole cause of an infarction; it is sufficient for the stress to be a substantial contributing factor." 282 N.W.2d at 535.

That reasoning is in line with this court's previous conclusion that it is the general rule that an employer takes the employee as he finds him. *Stout v. N. D. Workmen's Compensation Bureau*, 236 N.W.2d 889 (N.D.1975). Thus the fact that an employee may have physical conditions or personal habits which make him more prone to heart disease is not a reason for denying a claim if the preponderance of the evidence indicates that the heart attack was causally related to the worker's employment, with reasonable medical certainty, and was precipitated by unusual stress.[3]

Assuming, arguendo, that the heart attack was causally related to employment, the Bureau contends that there is insufficient evidence that the heart attack was precipitated by unusual stress. As we have heretofore observed in footnote No. 2, the unusual-stress requirement is now part of our statutory law. It is apparent from the legal literature that courts in various jurisdictions have had considerable difficulty in defining "unusual stress," particularly as applied to unusual emotional stress. Larson's *Workmen's Compensation Law*, Sec. 38.65. In 1940 this court, in considering an appeal from a district court judgment reversing a decision of the Bureau denying a claim for a stroke, stated:

> "While it appears to be the generally accepted rule that the acceleration of a pre-existing condition may be considered in certain cases to be the proximate cause of the injury sustained, we can not overlook the fact that every exertion has its effect upon the physical system; and if we carry the theory to extremes, then every movement in the course of employment would accelerate the natural condition of the physical body toward disease and decay and death. There must be more than this to justify a holding that the exertion or emotional disturbance was the proximate cause in this case." *Sandlie v. North Dakota Workmen's Comp. Bureau*, 70 N.D. 449, 454, 295 N.W. 497, 499.

*Sandlie* was quoted with approval by the majority of the court in *Suedel v. North Dakota Workmen's Compensation Bur.*, 218 N.W.2d 164 (N.D.1974), in which the court affirmed a district court decision upholding a denial of benefits for death due to a ruptured aneurysm.[4]

In *City and Cty. of Denver v. Indus. Commission*, 195 Colo. 431, 579 P.2d 80

---

**3.** We were told at oral argument that the Bureau had considered but rejected an aggravation award under Section 65–05–15, N.D.C.C. Although the Bureau's findings and conclusions do not specifically refer to a denial of an award under Section 65–05–15, it apparently is the Bureau's position that, absent a showing of unusual stress, there can be no aggravation award in cases involving heart attacks or strokes.

**4.** Justice Vogel dissented in *Suedel*, reasoning that *Sandlie* did not require an "unusual exertion" test and that such test was not the law of this State. As we observed heretofore, the "unusual exertion" test is now part of the statutory law of this State.

(1978), the Colorado Supreme Court held that evidence of job stress, e.g., physical strain accompanied by emotional or mental tension, is sufficient to support an award for a heart attack under a provision in the Colorado Workmen's Compensation Act similar to Section 65-01-02(8), N.D.C.C. The Colorado court stated:

"We also hold that unusual or extraordinary overexertion, as used in section 8-41-108(2) [C.R.S.1973; now section 8-41-108(2.5), C.R.S.1973 (1981 Supp.)], does not require that the work causing the attack be different in nature from the employee's usual work. The unusual overexertion doctrine must be applied according to the employee's work history rather than the work patterns of his profession in general." 195 Colo. at 435, 579 P.2d at 82.

We agree with the rationale of the Colorado Supreme Court. As applied to the facts in this instance was there such unusual stress proved by Delores? We think not. We reverse a decision of the Bureau only if its decision is not supported by its conclusions of law; or if its conclusions of law are not sustained by the findings of fact; or if the findings of fact are not supported by a preponderance of the evidence. *Asbridge, supra.* Here, we agree with the determination of the Bureau that the evidence is not sufficient to conclude that Aldean's heart attack was precipitated by unusual stress in the course of his employment.

The evidence of physical stress is simply that Aldean was hooking up air hoses on his tractor-trailer at the time of the heart attack. We do not understand Delores to argue that this was unusual stress for Aldean. Rather, her argument is that Aldean was under unusual emotional stress related to his employment. The evidence of that unusual stress upon which Delores relies consists of her testimony and that of Aldean's friend and fellow worker, Kermit Engebretson, both by deposition, that Aldean was under such stress due to his position. This testimony was that Aldean's employment required administrative duties as well as those of a regular employee, i.e., a "working foreman"; that he was also a union member; that he received calls from one or two fellow employees; and that he was "in the middle." [5] The nature of these calls to Aldean and their effect upon him are scantily outlined in the evidence. Dr. Kana, who also testified by way of deposition, did respond to a hypothetical question posed by Delores's counsel. That hypothetical question included assumptions involving Aldean's hypertension and cigarette smoking and emotional stress related to telephone calls received at home by Aldean that would upset and disturb him. In response to the hypothetical question Dr. Kana stated:

"A. I think taking all those facts you mentioned into consideration, including his hypertension and cigarette smoking and the excessive stress that apparently he was under at work, that the sudden collapse based on the information given, it was due to a myocardial infarction with *other* possibilities being possible; but a stroke would give you some time and an aneurysm, although you can leak a lot of blood quickly, would give you some time, you know."

Counsel for Delores then asked Dr. Kana:

"Q. So your opinion is, yes, it is causally related to the unusual stress of his employment; isn't that true?

"A. I would say so, yeah."

The testimony of Dr. Kana is not, of course, evidence that emotional stress did exist. He was asked to assume that it did exist in responding to the hypothetical question. Dr. Kana, who had not examined Aldean for some two years prior to Aldean's death, was told that Aldean was under emotional stress but Dr. Kana had no direct knowledge of such stress or the cause thereof. Thus the evidence that Aldean was under unusual stress caused by his employ-

---

5. Presumably this meant he was caught between management and his fellow union em- ployees.

ment is dependent solely upon the testimony of Delores and Kermit Engebretson, and, as we have already noted, that evidence is scanty at best.

Larson, in his treatise on *Workmen's Compensation Law*, page 7–202, notes that close questions involving emotional stress are inevitable when, instead of colorful triggering events, the employment contribution takes the form of a more protracted burden of worry, overwork, frustration, guilt, tension, or apprehension over losing one's job. After noting the many factual situations in which claims have been allowed or disallowed, the author, at page 7–217 of the treatise, notes that of all the categories of emotional causes of heart attacks and cerebral hemorrhages the poorest track record belongs to that of anger and excitement generated by work-connected arguments and fights. We have not read all the cases cited by Larson in his treatise. However, the cases we have reviewed indicate significantly more evidence of unusual emotional stress than is evidenced here. Remembering, as we must, that the burden is upon the claimant to establish his right to participate in the Workmen's Compensation Fund [*Claim of Bromley, supra*], and that we do not make independent findings of fact or substitute our judgment for that of the agency but determine only whether a reasoning mind could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record [*Power Fuels, Inc. v. Elkin, supra*], we cannot say that the findings of the Bureau concerning unusual stress were not supported by the evidence nor that the conclusion of the Bureau that Delores failed to prove that Aldean's heart attack was precipitated by unusual stress in the course of his employment was not supported by its findings.

The judgment of the district court is reversed and the decision of the Bureau is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.