Dennis NYHOF, Appellant,

v.

## NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellee.

Civ. No. 10200.

Supreme Court of North Dakota.

Oct. 20, 1982.

Kraemer, Beauchene & Associates, Fargo, for appellant; argued by Frederick D. Kraemer, Fargo.

Richard J. Gross, Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellee; argued by Joseph F. Larson, II, Bismarck.

ERICKSTAD, Chief Justice.

Dennis Nyhof, appellant, is appealing from an order entered by the District Court of Cass County affirming an order issued November 24, 1980, by the Workmen's Compensation Bureau denying him further disability benefits. The sole issue to be determined on appeal is whether or not the Bureau's order should be affirmed. Nyhof's contentions are threefold: first, the Bureau's findings of fact are not supported by a preponderance of the evidence; second, the Bureau's conclusions of law are not sustained by the findings of fact; and third, the Bureau's decision is not supported by the conclusions of law. For the reasons hereinafter stated, we affirm the order of the district court and the order of the Workmen's Compensation Bureau.

On June 15, 1976, Nyhof suffered a work-related injury to his lower back while employed by the City of Fargo as a refuse collector. This fact is not questioned. Nyhof's injury was diagnosed as a back sprain which normally heals within six to eight weeks. Nevertheless, Nyhof received temporary disability benefits from the Workmen's Compensation Bureau for over four years.[1] The Bureau also paid all Nyhof's medical expenses.

---

1. The North Dakota Workmen's Compensation Bureau paid disability benefits to the claimant from June 15, 1976, through October 28, 1980.

In its findings of fact, the Bureau made two crucial determinations:[2] first, there is not a scintilla of medical evidence to substantiate Nyhof's claim of continued disability, and, second, Nyhof lacks the incentive necessary to successfully complete a vocational rehabilitation program which would qualify him for sedentary employment.[3]

2. The North Dakota Workmen's Compensation Bureau made the following findings of fact:

"I.

"That on the 9th day of July, 1976, the claimant above named filed a claim with this Bureau for compensation and/or medical expenses resulting from an injury suffered by him on the 15th day of June, 1976.

"II.

"That on the 15th day of June, 1976, the claimant was employed by City of Fargo, Garbage Utility, Fargo, North Dakota, as an equipment operator II (refuse collector).

"III.

"That the claimant injured his low back while lifting and heaving garbage cans.

"IV.

"That the claimant's condition was diagnosed as a low back sprain.

"V.

"That the claimant has a history of recurrent low back problems.

"VI.

"That the claimant alleges he continues to be disabled as the direct result of his injury on June 15, 1976.

"VII.

"That as early as July, 1976, the claimant's physician advised him to seek a job change through vocational rehabilitation; and as early as September, 1976, the claimant's physician advised that the claimant was capable of performing sedentary-type work.

"VIII.

"That medical evidence throughout the record indicates that the claimant's physicians have continually stressed that he should actively seek vocational rehabilitation.

"IX.

"That the claimant entered into a rehabilitation contract with the Bureau on July 5, 1977, and enrolled in a two-year accounting course at the Moorhead Technical School, Moorhead, Minnesota.

"X.

"That the claimant dropped out of school, by his own choice on March 23, 1978, and did not notify the Bureau.

"XI.

"That in January, 1978, the claimant suffered injuries to his neck, shoulder, and low back in a vehicle accident; which accident was not the liability of the Workmen's Compensation Bureau.

"XII.

"That in October, 1978, the Bureau informed the claimant that, in light of his continued intermittent low back pain, it was the Bureau's intent to send him to a pain clinic in Minneapolis, Minnesota; however, the claimant chose not to go to the pain clinic, and, instead, went to Arizona.

"XIII.

"That the claimant was examined by an orthopedist in Arizona in March, 1979, whose evaluation revealed no objective findings, and who, as had the claimant's North Dakota physicians, suggested some form of work or rehabilitation.

"XIV.

"That medical evidence of July 26, 1979, indicates that the claimant has had disability far beyond what objective findings indicate.

"XV.

"That a myelogram and a CAT scan of the back were performed in January, 1980, neither of which showed any abnormalities.

"XVI.

"That medical evidence of January 30, 1980, states that the claimant '... should be in an active rehabilitation program because he can't go like this the rest of his life.'

"XVII.

"That the Bureau has attempted, on many occasions, to help the claimant to become involved in retraining and rehabilitation programs, and he has failed to cooperate.

"XVIII.

"That medical evidence indicates that the claimant has accepted the role of the disabled, and that he is satisfied with his present role of househusband and has no incentive to do anything else.

"XIX.

"That, according to the evidence, the claimant's financial position is 25 percent higher by receiving disability benefits than it was while he was working; and that it is doubtful that he can be encouraged to return to employment as long as such benefits continue.

"XX.

"That according to medical evidence, the secondary gains to the claimant, by his remaining disabled, are at this point considerable.

"XXI.

"That there is no substantiation that the claimant remains disabled.

"XXII.

"That the Bureau has paid all medical expenses to date in this case and has paid disability benefits from June 15, 1976, through October 28, 1980, and the claimant has, therefore, been adequately compensated for his injury on June 15, 1976."

3. Prior to his injury, the claimant earned yearly gross wages of approximately $15,262. However, after his injury, the claimant received ·

The Bureau's conclusions of law were two-fold: Nyhof failed to prove a continuing status of disability; thus, he was no longer entitled to disability benefits.[4]

Upon Nyhof's request, the Bureau reconsidered its order. However, before making a final determination, it requested that Nyhof be evaluated by the Bismarck Hospital Pain Assessment Unit. On May 18, 1981, based on a review of the entire file including the assessments of the Bismarck Hospital Pain Assessment Unit, the Bureau affirmed its order.

 When reviewing a decision of the Workmen's Compensation Bureau, we must review the findings of fact, conclusions of law, and order entered by the Bureau. *Davis v. North Dakota Workmen's Compensation Bureau,* 317 N.W.2d 820, 822 (N.D. 1982); *Nelson v. North Dakota Workmen's Compensation Bureau,* 316 N.W.2d 790, 793 (N.D.1982); *Inglis v. North Dakota Workmen's Compensation Bureau,* 312 N.W.2d 318, 321 (N.D.1981); *Claim of Bromley,* 304 N.W.2d 412, 414 (N.D.1981); *Steele v. North Dakota Workmen's Compensation Bureau,* 273 N.W.2d 692, 696 (N.D.1979); *Geo. E. Haggart, Inc. v. North Dakota Workmen's Compensation Bureau,* 171 N.W.2d 104, 111 (N.D.1969). Our review of this administrative agency decision is limited and involves the three-step process of determining whether or not the findings of fact are supported by a preponderance of the evidence, whether or not the conclusions of law are sustained by the findings of fact and whether or not the agency decision is supported by the conclusions of law. § 28–32–21, N.D.C.C.; § 28–32–19, N.D.C.C. *Davis, supra,* 317 N.W.2d at 822; *Nelson, supra,* 316 N.W.2d at 793; *Inglis, supra,* 312 N.W.2d at 322; *Claim of Bromley, supra,* 304 N.W.2d at 415.

Hence, in the case at bar, our first step is to ascertain whether or not the findings of fact are supported by a preponderance of the evidence. In *Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 219 (N.D.1979), we defined preponderance of evidence as "evidence more worthy of belief" or "the greater weight of evidence" or "testimony that brings the greater conviction of truth." *See, also, Gramling v. North Dakota Workmen's Compensation Bureau,* 303 N.W.2d 323, 328 (N.D.1981); *Steele, supra,* 273 N.W.2d at 697. We have further clarified the scope of review to be utilized under the "preponderance of evidence" standard by enunciating the following guideline:

". . . under the 'preponderance of the evidence' standard we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Nelson, supra,* 316 N.W.2d at 793; *Power Fuels, Inc., supra,* 283 N.W.2d at 220.

 In determining whether or not the "preponderance of evidence" standard was satisfied in this instance, we scrutinized Nyhof's entire file containing all the claims, correspondence, and medical records filed with the Bureau. *See, Inglis, supra,* 312 N.W.2d at 321; *Gramling, supra,* 303 N.W.2d at 327. The medical reports of Dr. Charles B. Anderson, Dr. R. O. Saxvik, Dr. M. W. Pulliam, and L. Keller, Registered Physical Therapist, were of substantial import in resolving this issue.

In 1980, Nyhof participated in a six-week TNI Out-Patient Pain Management Program where he was evaluated by Dr. Anderson who made the following observations:

"II.
"That the claimant has failed to prove that he is entitled to any additional benefits whatsoever under the North Dakota Workmen's Compensation Act in connection with his injury on June 15, 1976, over and above those benefits awarded to the date of this order."

---

social security and disability benefits of approximately $14,636 per year, tax free.

4. The North Dakota Workmen's Compensation Bureau's conclusions of law were the following:
"I.
"That the claimant has failed to prove that he remains disabled as the result of an employment injury on June 15, 1976.

"It is the overall impression of the staff that this is going to be a difficult case for several reasons. The patient is now making 25 percent more per week than he did when he was working and his income is now tax free. He is able to perform the duties of a 'househusband' and his wife is able to make a living on her own. Therefore, the financial situation is such that the patient would appear to be locked in and it is extremely doubtful that he can be budged unless this social and financial situation is altered in some manner." (September 24, 1980.)

"When asked if he would consider returning to work if his pain could be reduced by 100 percent, the patient indicated that he would be reluctant to risk re-injury to his back and to risk losing his disability benefits.... The secondary gains in this case are considerable and as a matter of fact at this point in time it would appear to be unsurmountable.... The patient certainly would appear to be capable of light duty work at this point in time." (October 8, 1980.)

"The patient appears to have settled into the role of a househusband and his wife seems to be pleased with this situation as well since now she has time to engage in her occupation of selling." (October 15, 1980.)

From April 13, 1981, through April 17, 1981, Nyhof was examined by Dr. Saxvik, Dr. Pulliam, and L. Keller, R.P.T., of the Bismarck Hospital Pain Assessment Unit. Dr. Saxvik analyzed Nyhof's case as follows:

"*Diagnosis:* We are unable to validate any significant orthopedic problem. He has no neurologic deficiencies. He has no significant psychogenic problems to account for his discomforts, and no evidence of drug/alcohol abuses.

"*Recommendations:* ...

"1. To discontinue medications.

2. Not to have any surgical procedures or facette injections.

3. To get involved with an exercise program at the YMCA.

4. He is capable of sed/light to med heavy work."

The medical records of Dr. Pulliam indicate that he reached a similar conclusion:

"It is clear from this man's past history that there is a marked degree of secondary gain here and it is highly unlikely that this man will ever be employed again so long as benefits are available to him."

L. Keller's records contain the following observations:

"He is walking with a limp in the left leg on weight bearing or partial weight bearing on the left leg. Part of the gait pattern, I feel, is put on for my benefit.... The patient did not seem to be uncomfortable during the interview and I do question the truthfulness of the patient's description of his pain." (April 16, 1981.)

Having reviewed the entire record, we find that a reasoning mind could have reasonably determined that the factual conclusions were proved by the weight of the evidence from the entire record. Thus, the Bureau's factual findings that Nyhof is no longer disabled and that he lacks the incentive needed to complete a program of vocational rehabilitation are supported by a preponderance of the evidence. These findings of fact sustain the agency's conclusions of law which in turn sustain its order delineating that Nyhof is currently not suffering from any disability arising from his injury in 1976; thus, at this time he is not entitled to any further disability benefits.[5] We therefore affirm the Bureau's order.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

---

5. In light of the medical findings that Nyhof suffers from no medically discernible disabilities, has refused to accept training which could qualify him for sedentary employment (employment less stressful on his back), and is through disability payments from the Workmen's Compensation Bureau retaining more income than when employed, the Bureau could reasonably have concluded that this secondary gain is preventing Nyhof from returning to gainful employment and even to training for sedentary employment. The Bureau could also have rea-

sonably concluded from all this that Nyhof has actually no pain or at least that the pain he suffers would not be appreciably aggravated

but in fact would be reduced if he returned to employment of a sedentary nature.